NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240145-U

NO. 4-24-0145

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 3, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Boone County |
| ZESHAN K. AHMED, | ) | No. 23CF133 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | C. Robert Tobin III, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Harris and Doherty concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The circuit court did not abuse its discretion in denying defendant pretrial release.

¶ 2       Defendant, Zeshan K. Ahmed, appeals the circuit court's order denying his

pretrial release under sections 110-6.1(a)(6.5) and 110-6.1(a)(8) of the Code of Criminal

Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(6.5), (8) (West 2022)), hereinafter as

amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023), commonly

known as the Pretrial Fairness Act. We affirm.

¶ 3                        I. BACKGROUND

¶ 4       On May 24, 2023, the State charged defendant with multiple controlled-substance

and driving-under-the-influence offenses based on events occurring on December 17, 2022. The

charges include possession of methamphetamine (720 ILCS 646/60(b)(2) (West 2022)),

possession of a controlled substance (cocaine) (720 ILCS 570/402(c) (West 2022)), possession of cannabis (more than 100 grams but less than 500 grams) (720 ILCS 550/4(d) (West 2022)), aggravated driving under the influence of alcohol, causing great bodily harm (625 ILCS 5/11-501(d)(1)(C), (d)(2)(F) (West 2022)), and aggravated driving under the influence (*id.* § 11-501(d)(1)(C)). A June 2023 order indicates defendant was, at that time, serving a sentence in the Illinois Department of Corrections (DOC) and was scheduled to be released on mandatory supervised release (MSR) on December 12, 2023.

¶ 5        The record reveals defendant was arrested on the above charges on December 12, 2023, and defense counsel, 10 days later, moved for reconsideration of his pretrial release conditions.

¶ 6        The State responded the same day by filing a verified petition to detain defendant under the dangerousness and willful-flight standards. The State alleged the following, in part:

"While on bond for [Boone County case No. 22-CF-113],
Aggravated Fleeing or Attempt to Elude and Leaving the Scene of
a Property Damage crash, the defendant is alleged to have caused a
crash which injured not only himself but the defendant's
passenger, who was pregnant with his child. While he is alleged to
have committed that crime, [he is] alleged to also have been in
possession of a Class 2 amount of methamphetamine, a Class 4
amount of cocaine[,] and a Class 4 amount of cannabis. He was
also on parole when he is alleged to have committed this offense.
While on bond in [Boone County case No. 22-CF-113], the State
filed three petitions to increase bond due to his non-compliance

- 2 -

with his conditions of bond. The defendant then failed to appear in court on December 29, 2022, and a bond forfeiture was finalized on February 10, 2023. He only came back into custody when he was served with various warrants, including a DOC hold."

¶ 7 At the January 11, 2024, detention hearing, the State asked the circuit court to consider the allegations in its verified petition and proffered no further evidence.

¶ 8 Defense counsel called defendant to testify. According to defendant, if he were released, he would return to his home, where he had lived his entire life. Defendant went to DOC on a parole hold in this case for two months. He went before the parole board and was given seven additional months. Defendant was in a cell with someone who beat him unconscious and strangled him. Defendant went before the parole board and did not report the incident. Because he was required to wear a mask, the board members could not see his injuries. Defendant did not report the incident because he "didn't even want nobody to look at [him] that way." Defendant had a second near-death experience at some date after April 2023 while imprisoned in Danville, Illinois. He believed he fainted while descending from his bunk and awoke in the infirmary after having lost a lot of blood. Defendant testified these experiences and the birth of his only child in April 2023 changed him. He vowed to follow any conditions of pretrial release "to be there for [his] daughter" and to assist his parents and grandmother financially. Defendant was employed, working nights. He would do "anything it takes."

¶ 9 Defense counsel argued defendant's criminal history showed no history of violence, other than when he was "way young" and there had been several years of no incidents of violence. Counsel emphasized defendant had no history of possession of weapons. Counsel further mentioned defendant's multiple head injuries and highlighted defendant's newfound

- 3 -

motivation to comply with court orders.

¶ 10 The State responded by asking the circuit court to take notice of the facts of Boone County case No. 22-CF-113. According to the State, defendant, while on bond in that case, committed the offenses in this case. Defendant's charges involved a major car crash when he had a blood-alcohol content over 0.08 and both methamphetamine and cocaine in his system. As a result of that crash, the passenger in the car suffered great bodily harm, including facial fractures, a basal skull fracture, and a pelvic fracture. The State concluded by arguing there were no reasonable conditions of bond to mitigate the danger defendant posed given defendant's history of noncompliance while on pretrial conditions and parole.

¶ 11 The circuit court found the State clearly and convincingly proved defendant should be detained under both the willful flight and dangerousness standards. Regarding the dangerousness standard, the court explained its findings as follows:

"Looking at some of those factors, nature and circumstances of the offense charged, he was out on bond [and] not supposed to consume alcohol or illegal substances. Probable cause would indicate that he did. First of all, based upon the evidence, I do think that—there is clear and convincing evidence—just the lab results themselves—to show that he committed the offense, and as to the great bodily harm, certainly the proffer as to the extent of the injuries to the mother of his child would get me to the clear and convincing evidence that proof is evident and the presumption great that he committed a qualifying offense.

I do find—after I go over the dangerousness factors, I do

- 4 -

find there's a real and present threat to the safety of the community. The nature and circumstances of this situation while out on bond—he crashes a vehicle with substantial amount of alcohol and illegal substances in his system. That, while not a crime of violence, ended up with an injury that was pretty violent in nature. History and characteristics of the defendant, any evidence of prior criminal history indicative of violent—violence, he's got a mob action—he had the robbery that was amended down. Maybe there was a little bit of weight there but not much since it was amended down, but at least the mob action is a crime of violence by its nature.

Any evidence of—down to—the current offense—whether at the time of the current offense the defendant was on probation, parole, aftercare, [MSR] or released from custody pending trial, the answer is yes, yes and yes. He was on parole, slash, MSR. He was out on bail on one case and that's—that's the fact—the eighth factor there.

So ultimately—and he's got a significant drug history as far as dealing goes both at the incident—you know his past history. He's went to DOC a couple times on drug dealing and ultimately there's a backpack full of drugs found in this vehicle at the time of this accident, Class 2 amount of meth. So again, I think the community at large is—should be concerned if he's out, you know,

for anybody that might be potential purchasers of the drugs that he's pedalling [*sic*].

So based upon that, I do find—I can't think of—similar analysis regarding conditions on the dangerousness factor. I can't fathom anything we haven't tried already that's going to change other than—I know he gives verbiage that he's going to make changes, but he's been doing that throughout and he's shown no ability while out of custody of abiding by any conditions and so I do find that there's no condition or combination of conditions that would mitigate under the dangerousness factor ***."

¶ 12    This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    On January 25, 2024, defendant filed a notice of appeal challenging the order denying his pretrial release under Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023). Defendant's notice of appeal is a completed form from the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. R. 606(d) (eff. Dec. 7, 2023)), by which he asks this court to release him from custody with conditions. The form lists several possible grounds for appellate relief and directs appellants to "check all that apply and describe in detail." Defendant checked three grounds for relief. Defendant did not file a supporting memorandum.

¶ 15    On the notice of appeal, there are two checked boxes for which defendant provides no additional argument or factual support. Instead, defendant reiterated on the lines for additional argument the same language that appears on the preprinted form. Via those two checked boxes, defendant plainly contends the State failed to prove by clear and convincing

- 6 -

evidence the proof is evident or the presumption great he committed a detainable offense and defendant poses a real and present threat to the community based on the specific, articulable facts of the case.

¶ 16 We have reviewed the record and found defendant failed to satisfy his burden of proving the circuit court abused its discretion by deciding the State proved those factors by clear and convincing evidence. See, *e.g.*, *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44, 91 N.E.3d 950 (stating the appellant bears the burden of persuasion as to his or her claims of error). Defendant did not meet his burden as appellant in light of the laboratory evidence, the controlled substances found on defendant, and defendant's history of failing to comply with conditions of release, particularly those barring drug and alcohol use.

¶ 17 Via the third checked box on his notice of appeal, defendant argues the State failed to prove by clear and convincing evidence no condition or combination of conditions can mitigate the real and present threat to the community or defendant's willful flight. Under the preprinted text, defendant wrote the following, in part:

"Defendant testified as to the reasons he missed Court in that he had serious medical issues, had a doctor's appointment on one [of] the days he missed court on [Boone County case No. 22-CF-113] (12-29-22), and has had several medical issues since 12-17-22 that would mitigate Defendant's risk of willful flight. Defendant also testified that the birth of his first child would also mitigate his risk of willful flight, as well as counsel argues that a condition of 'no driving a vehicle', no drugs or alcohol use[,] a

> substance abuse assessment and/or mental health assessment could
>
> be used as conditions."

Although defendant's added argument does not specifically address the dangerousness factor, we will consider his argument as to whether such facts establish the State did not meet its burden of proving by clear and convincing evidence no condition or combination of conditions can mitigate the threat he poses to the community.

¶ 18            Under the Code, all criminal defendants are presumed eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). However, the Code authorizes a circuit court to deny pretrial release under the dangerousness standard if, upon verified petition, the State proves by clear and convincing evidence, in part, no condition or combination of conditions can mitigate the real and present threat the defendant poses. *Id.* § 110-6.1(a), (e)(3). We apply the abuse-of-discretion standard when reviewing the propriety of a detention order. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. An abuse of discretion will be found if the circuit court's decision is "arbitrary, fanciful or unreasonable, or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal quotation marks omitted.) *Id.* ¶ 10.

¶ 19            Here, the record shows the circuit court did not err in finding the State clearly and convincingly proved no condition or combination of conditions could mitigate the threat and, thus, in detaining defendant. The Code provides a list of factors the circuit court may consider when determining whether a defendant poses a threat to a person or persons or the community. See 720 ILCS 5/110-6.1(g) (West 2022) (setting forth factors a circuit court may consider when determining dangerousness). Here, when finding defendant posed a threat to the community, the court weighed these factors, highlighting the nature and circumstances of the offense (*id.* § 110-6.1(g)(1)), defendant's history and characteristics, which includes violent crimes (*id.*

§ 110-6.1(g)(2)), and the fact defendant was on bond when these offenses were committed (*id.* § 110-6.1(g)(8)). The court then considered whether any condition or combination of conditions could mitigate the real and present threat the court identified. Given defendant's criminal history and repeated failures to comply with earlier court-ordered conditions, the court determined no condition or combination of conditions could mitigate that threat. Its decision is not unreasonable, arbitrary, or fanciful.

¶ 20　　　　Because we have found defendant's detention is proper under the dangerousness standard, we need not consider his arguments regarding the willful-flight standard.

¶ 21　　　　　　　　　　　　　III. CONCLUSION

¶ 22　　　　We affirm the circuit court's judgment.

¶ 23　　　　Affirmed.